IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| for the use and benefit of | ) | |
| MITCHELL ACOUSTICS & | ) | |
| DRYWALL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-15-293-R |
| | ) | |
| GSC CONSTRUCTION, INC. and | ) | |
| LIBERTY MUTUAL INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court are Liberty Mutual Insurance Company's ("Liberty") Motion to Dismiss, Doc. No. 5, and Defendant GSC Construction, Inc.'s ("GSC") Motion to Dismiss or, in the Alternative, to Compel Arbitration and Stay Judicial Proceedings, Doc. No. 8. Having considered the parties' submissions, the Court denies Liberty's motion to dismiss and grants GSC's motion to compel arbitration and stay judicial proceedings.

## Background

Plaintiff, a subcontractor on a federal construction project, brings suit against the prime contractor, GSC, and GSC's surety on the prime contract, Liberty. Compl. ¶ 1. Plaintiff sues under the Miller Act, 40 U.S.C. §§ 3131-3134, and for breach of contract and quantum meruit. Compl. 2-8. Liberty executed a payment bond, and pursuant to that bond, agreed to pay GSC's obligations under the subcontract in the event of GSC's default. *Id.* ¶¶ 30-31. The government eventually terminated GSC, and on June 19, 2014,

GSC directed Plaintiff to cease work. *Id.* ¶ 15. Plaintiff alleges that GSC has refused to pay for labor and materials in accordance with the subcontract, *id.* ¶¶ 18-19, and that Liberty has refused to comply with the terms of the payment bond, *id.* ¶ 34. Finally, Plaintiff alleges that although the subcontract requires mediation prior to filing a lawsuit for claims arising from the contract, Defendants "have refused to engage in that mandatory mediation." *Id.* ¶ 35.

## Analysis

### A. Liberty's Motion – Diversity Jurisdiction

Liberty contends that this Court lacks subject matter jurisdiction under 28 U.S.C. § 1332 because Plaintiff has failed to show that the amount in controversy exceeds $75,000. Doc. No. 5, at 1-2. Because Plaintiff sues under the Miller Act, Compl. 6-8, the Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiff also sues for breach of contract and quantum meruit. Compl. 2-6. The undersigned need not analyze the issue of diversity jurisdiction because the Court has supplemental jurisdiction over these state law claims under 28 U.S.C. § 1367. *See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1220 (10th Cir. 2000) ("Once federal question jurisdiction exists, it is within the trial court's discretion to exercise supplemental jurisdiction over those state law claims that derive from a common nucleus of facts." (citation omitted)). Accordingly, Liberty's motion to dismiss is denied.

B. **GSC's Motion – Mediation and Arbitration**

1. **Georgia Law on Insurance Disputes**

GSC asks the Court to dismiss this action, or, in the alternative, to order Plaintiff to arbitrate, as required by the subcontract, and stay these proceedings. Doc. No. 8, at 2. In response, Plaintiff first argues that arbitration under the subcontract is governed by Georgia law, which prohibits the arbitration of insurance disputes. Doc. No. 16, at 4 (citing Compl., Ex. 1, at 15 ("This contract is subject to arbitration pursuant to the Georgia Uniform Arbitration Act, Ga Code Ann § 9-9.")). Section 2 of the Federal Arbitration Act provides that a written agreement to arbitrate "in any maritime transaction or a contract evidencing a transaction involving commerce … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (quoting 9 U.S.C. § 2). But choice-of-law provisions applying a particular state's procedural rules on arbitration are generally enforceable.[1]

Under Georgia law, arbitration clauses are not enforceable in a contract of insurance. *McGowan v. Progressive Preferred Ins. Co.*, 637 S.E.2d 27, 29 (Ga. 2006) (citation omitted) (citing GA. CODE ANN. § 9-9-2(c)(3)). "Insurance" is defined as "a contract which is an integral part of a plan for distributing individual losses whereby one

---
[1] *See Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989) ("There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate. Interpreting a choice-of-law clause to make applicable state rules governing the conduct of arbitration—rules which are manifestly designed to encourage resort to the arbitral process—simply does not offend the rule of liberal construction set forth in *Moses H. Cone*, nor does it offend any other policy embodied in the FAA." (footnote omitted)).

undertakes to indemnify another or to pay a specified amount or benefits upon determinable contingencies." GA. CODE ANN. § 33-1-2(2) (West); *see* § 9-9-2(c)(3) (referring to § 33-1-2 for the definition of "insurance").

The only authority Plaintiff cites in support of its position that "[u]nder Georgia law, the SubContract is construed as a contract of insurance, leaving it subject to O.C.G.A. § 9-9-2(c)(3)'s prohibition against arbitration," Doc. No. 16, at 4, is a case from the U.S. District Court for the Middle District of Georgia, *Lawson v. Life of the South Ins. Co.*, No. 4:06-CV-42 (WLS), 2010 U.S. Dist. LEXIS 31296 (M.D. Ga. Mar. 31, 2010). In *Lawson*, the plaintiffs purchased an automobile from a car dealership in Morrow, Georgia. *Id.* at *1-2. In that transaction, they signed a retail installment sales contract ("RISC") that governed the terms of an installment loan they took out with a bank to finance the purchase of the vehicle. *Id.* at *2. The RISC contained an arbitration clause. *Id.* Plaintiffs also signed an insurance certificate that evidenced their purchase of a life insurance policy from the defendant to cover the balance of the loan in the event of their death. *Id.* The certificate provided that if they paid the loan off early, they were eligible for a refund of any unearned premium on the policy. *Id.* at *2-3. Their complaint alleged that the defendant failed to provide such a refund after they prepaid their loan in full. *Id.* at *3.

The *Lawson* court found that action to involve an "insurance dispute" under Georgia law and denied the defendant's motion to compel arbitration. *Id.* at *14. In so holding, it relied on the Supreme Court of Georgia's opinion in *Love v. Money Tree, Inc.*, 614 S.E.2d 47, 48 (Ga. 2005). *Lawson*, 2010 U.S. Dist. LEXIS at *13-14. In *Love*, the

court twice used the expansive phrase "disputes involving insurance" when discussing Georgia's ban on arbitration of these disputes. *Love*, 614 S.E.2d at 50. In *Lawson*, the dispute was over a term of an insurance certificate signed in Georgia, and the motion to compel arbitration was by an insurer against its insured. *Lawson*, 2010 U.S. Dist. LEXIS at *14. Therefore, the *Lawson* court reasoned, that case was "an insurance dispute governed by Georgia law." *Id.*

Here, the motion to dismiss is not brought by an insurer, but rather by the contractor, GSC. Plaintiff alleges that GSC has failed to pay for labor and materials, as required by the subcontract. Compl. ¶¶ 18-19. Even if the dispute between Plaintiff and Liberty is an "insurance dispute" under Georgia law,[2] the dispute between Plaintiff and GSC clearly does not require an analysis of "an insurer's potential liability to an insured." *McGowan*, 637 S.E.2d at 171. Therefore, the Court rejects this argument as a basis for not enforcing the arbitration agreement between Plaintiff and GSC.

### 2. Waiver of Right to Arbitration

Plaintiff next argues that GSC waived its right to invoke the arbitration clause of the subcontract by waiting over ten months to attempt to enforce it. Doc. No. 16, at 6. According to Plaintiff's authority, *id.* at 5-6, "[a] party waives his right to arbitrate when he actively participates in a lawsuit or takes other action inconsistent with that right." *Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C. Cir. 1966) (footnote omitted). Although Plaintiff asserts that GSC has been named as a defendant in two other

---

[2] The definition of "insurer" under Georgia law includes a surety. GA. CODE ANN. § 33-1-2(4) (West) ("'Insurer' means any person engaged as indemnitor, surety, or contractor who issues insurance, annuity or endowment contracts, subscriber certificates, or other contracts of insurance by whatever name called.").

5

suits by different subcontractors over the same construction project, Doc. No. 16, at 6 n.4, it does not explain how being a defendant in those suits is inconsistent with GSC's right to arbitrate this dispute. The Court concludes that GSC has not waived its right to arbitrate Plaintiff's claims.

### 3. Mediation as a Condition to Arbitration

Finally, Plaintiff contends that the arbitration clause in the subcontract is conditioned by the parties engaging in mediation, and because "GSC refused Plaintiff's request for mediation, the arbitration provision has not been activated." Doc. No. 16, at 5; *see* Compl., Ex. 1, at 8 ("Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Paragraph 6.1."); *see also id.* at 7 ("Any claim arising out of or related to this Subcontract … shall be subject to mandatory mediation as a condition precedent to arbitration proceedings by either party.").

As Plaintiff acknowledges in its Complaint, "Article 6.1 of the SubContract requires mediation before the filing of a lawsuit arising out of disputes with respect to the SubContract." Compl. ¶ 35. The subcontract provides that a "[r]equest for mediation shall be filed in writing with the other party." *Id.*, Ex. 1, at 7. The contract also states that the request for mediation "may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or order." *Id.*

In support of its assertion that "GSC declined to respond to Plaintiff's request for mediation," Plaintiff refers the Court to letters and emails contained in Exhibit 2 to its

response to GSC's motion to dismiss. Doc. No. 16, at 2. Plaintiff sent GSC a "Notice of Claim" on June 20, 2014, in which it stated that it had a claim against GSC for $292,045.00, and that "[u]nless [they] receive payment in FULL, [they] shall commence court action without further notice." Doc. No. 16, Ex. 2, at 1-2. There is no mention of mediation or arbitration in this letter. Although an individual from GSC was included on two subsequent emails discussing Plaintiff's claim, there was no mention of mediation or arbitration in either of these communications. *See id.* at 4-5 (listing "lockegsc@bellsouth.net" as a recipient).

The first mention of mediation and arbitration appears in an email dated January 12, 2015 from Drew Cunningham, an attorney for Plaintiff, to Gregory Weinstein, an attorney for Liberty, with a copy sent to Sheldon Swan, an attorney for Plaintiff. *Id.* at 11; Doc. No. 19, at 2. In this letter, Mr. Cunningham states that Plaintiff "wishes to arbitrate this matter with Liberty Mutual Insurance Company and GSC Construction, Inc., as is specifically provided for in the Subcontract." Doc. No. 16, Ex. 2, at 11. There is no evidence that anyone from GSC received this letter, and no evidence of any other communication from Plaintiff to GSC in which Plaintiff asked GSC to mediate its claims against GSC.

To the contrary, the communications indicate that Plaintiff sought mediation only with Liberty, and asserted it was *Liberty's* job to schedule mediation with GSC. *Id.* at 13 ("Liberty Mutual conditions mediation with Mitchell on Mitchell being able to schedule mediation with Liberty's principal, GSC out of Augusta, GA. That is not Mitchell's job. That is your job."). In response to Liberty asking why Plaintiff "refuses to reach out to

7

GSC recognizing that it has a contract with GSC," *see id.* at 15, Plaintiff stated, "Your latest refusal to discuss mediation with your Surety's principal (requiring Mitchell to make that happen) is causing an unnecessary impasse that will lead to litigation," *id.* at 16.[3] Because Plaintiff has not directed the Court to evidence that it filed a written request for mediation of its claims with GSC, the undersigned finds that GSC did not refuse its request for mediation, and the motion to compel arbitration and stay the proceedings is granted.

## Conclusion

In accordance with the foregoing, Liberty's motion to dismiss, Doc. No. 5, is DENIED, and GSC's motion to compel arbitration and stay judicial proceedings, Doc. No. 8, is GRANTED. Plaintiff and GSC shall mediate in an attempt to resolve this dispute. If the dispute is not resolved through mediation, the parties shall participate in arbitration. This case is stayed pending the completion of this process. Plaintiff and GSC shall notify the Court when this process is complete.

IT IS SO ORDERED this 24th day of June, 2015.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

[3] An individual from GSC was copied on this email. Doc. No. 16, Ex. 2, at 16 (listing "lockegsc@bellsouth.net" as a recipient). This individual was also copied in an email in which Sheldon Swan stated to Liberty, "If you require GSC's attendance to mediate with Mitchell, please contact GSC and Liberty, and advise which of these dates work for you." *Id.* at 13-14 (listing "lockegsc@bellsouth.net" as a recipient). Neither of these communications constitutes a written request from Plaintiff to GSC to mediate.